DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Cheyenne Yannitell Oaks, appeals from the judgment of the Washington County Court of Common Pleas denying her request that her ex-husband, Appellee Mark Yannitell, have only supervised visitation with their three minor children. In support of her appeal, Appellant presents two assignments of error. First, Appellant contends that the trial court's denial of her request is against the manifest weight of the evidence, is an abuse of discretion, and is not in the best interests of the children. Secondly, Appellant contends that the trial court erred in relitigating evidence that it *Page 2 
should have been barred from relitigating under the doctrine of collateral estoppel. Because we find no merit to the issues raised by Appellant, and because the trial court's decision was supported by competent, credible evidence, we affirm the judgment of the trial court.
 FACTS {¶ 2} Appellant and Appellee were divorced in Washington County on August 23, 2005. Appellant was designated the residential parent of the parties' three minor children and Appellee was granted standard orders of visitation. There was no shared parenting plan. Subsequent to the divorce, Appellee relocated to Texas and remarried. Appellant also remarried and now resides in Franklin county.[2]
 {¶ 3} In 2007, several motions came before the trial court for determination. The first of these, filed on February 20, 2007, was a motion by Appellant to transfer jurisdiction to Franklin county. This motion was denied on March 14, 2007. The next motion, which was filed by Appellant on March 23, 2007, was an emergency ex parte motion to suspend or terminate visitation. On the same day, Appellant also filed a motion to reallocate parental rights and responsibilities, claiming that a change in circumstances had occurred. In support of these motions, Appellant attached *Page 3 
exhibits which included the following: (1) a copy of a criminal complaint filed in West Virginia charging Appellee with a felony charge of false pretenses, and stating that a warrant had been issued for his arrest; (2) an ex parte order issued by a North Carolina court indicating that Appellee's visitation with his other child from another marriage was modified to supervised visitation only; (3) the affidavit of Appellant; and (4) a copy of a videotape of an internet YouTube video created by Appellee regarding his children and issues related to custody and visitation.
 {¶ 4} In response to these filings, on March 30, 2007, Appellee filed an affidavit in response to Appellant's motion for an ex parte order. Subsequently, on April 12, 2007, Appellee filed a motion to show cause and affidavit in support, asking that Appellant be required to show cause as to why she had failed to comply with the prior orders of the court, namely with the order of visitation, which Appellant had denied Appellee, as a result of her concerns, and also based upon advice of counsel. The trial court issued an entry on April 23, 2008, ordering that Appellee's visitation with the minor children be supervised, setting the matter for further hearing on June 14, 2008.
 {¶ 5} In the meantime, on April 24, 2008, Appellant apparently filed a motion for a civil protection order ("CPO") in the Franklin County Court of *Page 4 
Common Pleas. A hearing on that motion was apparently held on May 8, 2007, which resulted in the granting of a CPO against Appellee with respect to Appellant and their three minor children. Although Appellant filed a copy of the transcript of that hearing in the present case on June 13, 2007, neither a copy of the complaint, nor a copy of the final order granting the CPO was filed or made part of the record.
 {¶ 6} On June 14, 2007, a hearing was held in the Washington County court on all pending motions. The entry issued by the court as a result of that hearing indicated that "[t]he parties advised the Court that a resolution of the case had been negotiated and the same was read into the record by attorney Stephen P. Ames. Upon inquiry, Plaintiffs [Appellee herein] attorney acknowledged the accuracy of the agreement as read into the record and Defendant [Appellant herein] personally requested that the agreement be approved and made the Order of the Court. The entry goes on to state that "[b]ased upon the agreement of the parties, the Court makes the following ORDERS:
 I. Plaintiff, Mark Yannitell, shall submit to psychological testing by Dr. Michael Harding, providing Dr. Harding is available to complete the testing in a timely fashion. In the event Dr. Harding is unavailable, the parties shall utilize the services of Dr. Gail Rymer or any other Doctor agreeable to both parties. The evaluation is to determine (a) If Plaintiff is suicidal and because of such condition he presents a risk of harm to the parties' three minor children while exercising unsupervised visitation and (b) If Plaintiff suffers from any additional mental health condition that, *Page 5 
without proper treatment, presents a risk of harm to the parties' three minor children if Plaintiff is permitted to exercise unsupervised visitation.
 II. Both parties, through their counsel of record, shall be given the opportunity to advise the testing Doctor of concerns, or lack thereof, they have relative to Mark Yannitell's mental health. Both parties shall also be given the opportunity to supply the Doctor with physical evidence, such as video tapes, e-mails, letters, etc. Copies of all such material supplied to the Doctor shall also be provided to opposing counsel of record.
 III. The report of the Doctor shall be filed with the Court with a copy provided to each attorney of record. * * *"
 {¶ 7} The matter came on for hearing on September 4, 2007. When it became apparent that Dr. Harding would not recommend that Appellee's visitation be supervised, Appellant requested and was granted a continuance in order to obtain her own expert; however, the trial court reinstated Appellee's visitation with the children pursuant to the previous orders of the court.
 {¶ 8} The matter was finally heard by the court on December 10, 2007. At that hearing, both Dr. Harding, as well as Appellant's retained expert, Dr. Paulucci, testified. After hearing testimony by both experts, as well as by the parties and various witnesses, the trial court denied Appellant's motions and ordered that Appellee continue to have unsupervised visitation, with one *Page 6 
caveat. Pursuant to the recommendation expressed by Appellant's expert, Dr. Paulucci, the trial court ordered:
 "As a prophylactic measure, Plaintiff [Appellee] shall submit a statement from a family physician regarding Plaintiffs need or lack of need for treatment of depression or other mental health condition. The first such statement shall be supplied to Defendant [Appellant] before Plaintiff exercises visitation during the 2007 Christmas Holiday. Additional statements from Plaintiffs Doctor shall be supplied to Defendant at least thirty (30) days before exercised summer visitation."
 {¶ 9} It is from this order that Appellant now brings her current appeal, assigning the following errors for our review.
 ASSIGNMENTS OF ERROR {¶ 10} "I. THE TRIAL COURT'S DECISION TO DENY APPELLANT'S REQUEST FOR THE REALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS AN ABUSE OF DISCRETION OF THE TRIAL COURT AND NOT IN THE BEST INTEREST OF THE PARTIES' THREE MINOR CHILDREN.
 {¶ 11} II. THE TRIAL COURT ERRED IN RELITIGATING EVIDENCE THAT IT SHOULD HAVE BEEN BARRED FROM RELITIGATING UNDER THE DOCTRINE OF COLLATERAL ESTOPPEL."
 LEGAL ANALYSIS {¶ 12} In her first assignment of error, Appellant contends that the trial court's decision to deny her request for the reallocation of parental rights and responsibilities was against the manifest weight of the evidence, was an abuse of discretion and was not in the best interests of the children. We *Page 7 
initially note that the motion at issue that was denied at the trial court level was styled as a motion to reallocate parental rights and responsibilities and was based on an alleged change in circumstance. However, as the court properly noted during the hearing on the motion, the motion was essentially a motion for a modification of visitation, which is governed by R.C. 3109.051 and only involves a best interest of the child analysis, rather than a motion for reallocation of parental rights and responsibilities, which is governed by R.C. 3109.04 and requires that a change in circumstance be demonstrated, as well as a best interest of the child analysis. R.C. 3109.04 and 3109.051; See, also, Braatz v. Braatz, 85 Ohio St.3d 40, 1999-Ohio-203,706 N.E.2d 1218; Flynn v. Flynn, Franklin App. No. 02AP-801, 2003-Ohio-990. Thus, we will review Appellant's first assignment of error as a challenge to the court's denial of her motion for modification of visitation.
 {¶ 13} Appellant raises several issues under her first assignment of error. First, Appellant essentially contends that the trial court improperly weighed the expert testimony provided by Dr. Harding and Dr. Paulucci, arguing that more weight should have been afforded to Dr. Paulucci's testimony. Appellant also argues that Appellee was not truthful in his testimony or during the evaluation by Dr. Harding. Second, Appellant contends that the trial court should have given more weight to the testimony *Page 8 
of Michelle Dyer, another ex-wife of Appellee's and mother of his teenage daughter. Specifically, Appellant argues that the trial court abused its discretion in not placing more weight on testimony from Dyer that Appellee had failed to return their child on time after visitation and also had made false allegations of abuse to Children Services.
 {¶ 14} Third, Appellant essentially contends that the trial court abused its discretion in failing to defer to the credibility determinations made by the Franklin County court in issuing the CPO, arguing that by hearing evidence on issues already litigated during the motion for the CPO, the trial court was "relitigating evidence that has already been litigated." Appellant claims such action is barred by the doctrine of collateral estoppel. Finally, Appellant contends that the trial court erred by ordering standard visitation for Appellee to take place in Florida in a home with Appellee's new wife, who is wanted on a felony charge. Specifically, Appellant argues that the trial court did not consider the relevant best interest factors, including the factors contained in R.C. 3109.051(D)(2)(7) and (9).
 {¶ 15} "[W]hen a parent seeks to modify a previous visitation arrangement, it is that party who bears the burden of proof as to whether the prior arrangement was not in the best interests of the [child]." Bodine v. Bodine (1988), 38 Ohio App .3d 173, 175. We will not reverse a trial court's *Page 9 
decision on a motion for modification of visitation rights absent an abuse of discretion. Archer v. Archer (Sep. 24, 1997), Pickaway App. No. 96CA37. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard of review, we must not substitute our judgment for that of the trial court.In re Jane Doe I (1991), 57 Ohio St.3d 135, 138. We must presume the findings of the trial court are correct because the trial judge is best able to observe the witnesses and use those observations in weighing the credibility of the testimony. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81; See, also Knapp v. Knapp, Lawrence App. No. 05CA2,2005-Ohio-7105.
 {¶ 16} Further, with respect to Appellant's contentions regarding the weight afforded to certain testimony by the trial court, we note that the judgment of a trial court should not be overturned as being against the manifest weight of the evidence if some competent and credible evidence supports that judgment. See CE. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279, 376 NE.2d 578, syllabus. Factual findings of the trial court are to be given great deference on review because the trial court is in a better position "to view the witnesses and observe their demeanor, *Page 10 
gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273; see, also,Myers v. Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742.
 {¶ 17} The credibility of witnesses and the weight given to the evidence are issues for the trier of fact. See Cole v. Complete AutoTransit, Inc. (1997), 119 Ohio App.3d 771, 777-778, 696 N.E.2d 289;GTE Telephone Operations v. J H Reinforcing Structural Erectors,Inc., Scioto App. No. 01CA2808, 2002-Ohio-2553, at ¶ 10; Reed v.Smith (Mar. 14, 2001), Pike App. No. 00CA650. The trier of fact is better suited than an appellate court to view the witnesses and observe their demeanor, gestures, and voice inflections and to use those observations in weighing credibility. See Myers v. Garson and SeasonsCoal Co. v. Cleveland, supra. Thus, the trier of fact is free to believe all, part, or none of the testimony of any witness who appears before it. See Rogers v. Hill (1998), 124 Ohio App.3d 468, 470, 706 NE.2d 438;Stewart v. B.F. Goodrich Co. (1993), 89 Ohio App.3d 35, 42,623 NE.2d 591; see, also, State v. Nichols (1993), 85 Ohio App.3d 65, 76,619 NE.2d 80; State v. Harriston (1989), 63 Ohio App.3d 58, 63,577 NE.2d 1144. *Page 11 
 {¶ 18} The first issue raised under Appellant's first assignment of error deals with the weight afforded by the trial court to the expert testimony of Drs. Harding and Paulucci. As set forth above, the parties agreed that Appellee would be evaluated by Dr. Harding. Dr. Harding's expert opinion, after evaluating Appellee, was that Appellee did not pose a current threat to himself or his children, should he be permitted to exercise unsupervised visitation with them. Appellant's expert, Dr. Paulucci, did not conduct an evaluation of Appellee, but did review the raw data submitted to Dr. Harding, as well as Dr. Harding's report. In her brief, Appellant seems to argue that it was Dr. Paulucci's opinion that Appellee did pose a threat to his children and that Appellee's visitation with the children should be supervised. After reviewing the transcript of the hearing, we do not believe that the evidence supports Appellant's argument.
 {¶ 19} The transcript of the December 10, 2007, hearing indicates that Dr. Harding testified that at the time of his evaluation of Appellee, Appellee had no suicidal ideology. He also testified that while Appellee may have mood disorder, bipolar disorder, or as he suspects, borderline personality disorder, Appellee, at the time of his evaluation, was not a risk to himself or others. Thus, in answer to the trial court's questions as to whether Appellee was suicidal or suffered from any other mental health condition which would *Page 12 
present a risk of harm to his children should he permitted to exercise unsupervised visitation with them, Dr. Harding answered in the negative.[3]
 {¶ 20} In addition to the testimony of Dr. Harding, Appellant introduced testimony from her own separately hired expert, Dr. Paulucci. The transcript of the December 10, 2007, hearing indicates that Dr. Paulucci testified as follows with respect to whether Appellant required medical monitoring and whether he posed a risk of harm to his children:
 "Q. Monitor — monitor them, so that they won't injure themselves?
 A. Sure.
 Q. Yeah. You're not going to monitor them because they pose a risk of harm to someone else, but you're going to monitor them because they pose a risk of harm to themselves?
 A. They could pose a harm to themselves, and certainly, if you're impulsive or — you could harm somebody else, or if you were successful, I suppose, in harming yourself, or even unsuccessful, in the fact that you may have caused yourself damage, that could harm other people, because of the emotional effect upon other people who you love. *Page 13 
 Q. It might have an emotional impact on them?
 A. Sure, it could.
 Q. But there's nothing in Mr. Yannitell's profile from the data that you reviewed, that suggests that he poses a threat of physical harm to anybody around him?
 A. Don't see that." (December 10, 2007, Hrg. transcript, pp. 34-35).
 {¶ 21} Further, when questioned by the trial court regarding his recommendations regarding visitation, Dr. Paulucci testified as follows:
 "BY THE COURT:
 Q. You have been asked about supervision and I've heard it mixed up, and I'm just trying to be clear what your testimony is. As I understand what you said about the MMPI, that the condition that that Mr. — the mood disorder that Mr. Yannitell has been diagnosed with as a result of that testing, would indicate that if there's a — if there's a significant suicide history or ideation, that he be supervised; but him being supervised, what you're talking about, then is him seeing his doctor on a regular basis, to ascertain whether or not he is going into deep depression. That's not the same as supervision for visitation, is it?
 A. No, again, but of course, the profile wouldn't speak to this specific custodial and visitation issue that we're talking about.
 Q. Right.
 A. So, can you specifically say — I mean, certainly, that's not the specific prediction from — the actual test interpretation, that he was specifically monitored through visitation. I think, again, one could extrapolate from that, though, if there, again, if there is a history of suicidal tendencies or attempts and things like that — and I don't know — I would be honest with you; I don't know specifically how you would draw that level of supervision. I mean, is it just supervised visitation, or is it supervision, again, as I mentioned to you, where — it seems to *Page 14 
me that if — if — a place to start would be, even though he may be resistant to treatment, that if you had a mental health person that he had a consistent relationship with, that could monitor — which to me is what the profile is saying — the underlying personality dynamics, that if he's under stress, he may decompensate, get depressed, and these things come back up — that could then, let, you know, and say to people, that he's not in good health at this point, and we need to maybe do something different." (December 10, 2007, Hrg. transcript, pp. 46-48).
 {¶ 22} Thus, Appellant's own expert stated that in his opinion, the evaluation that was conducted indicated that Appellee's mental health status should be closely monitored by a physician, not that his visitation with his children should be monitored or supervised. In fact, at another point in Dr. Paulucci's testimony, he indicated that such monitoring could be accomplished by a family physician, or even simply by family members that were around him on a day to day basis. As set forth in the entry, the trial court actually ordered that Appellee be monitored by his family physician and provide a statement of good health prior to exercising unsupervised visitation with his children, which was exactly what was recommended by Appellant's own expert.
 {¶ 23} Accordingly, the trial court's decision, as based on the expert testimony before it, is supported by competent and credible evidence, and is not against the manifest weight of the evidence. Further, even assuming that the trial court's decision afforded more weight to Dr. Harding's testimony *Page 15 
versus Dr. Paulucci's testimony, this would have been well within its province, bearing in mind that the credibility of witnesses and the weight given to the evidence are issues for the trier of fact.Cole, supra;. GTE Telephone Operations, supra; Reed, supra.
 {¶ 24} In the second issue raised under her first assignment of error, Appellant again argues that the trial court abused its discretion by failing to afford more weight to the testimony of Michele Dyer regarding Appellee's past history of failing to return his other child from visitation on time and making false allegations of abuse to Children Services. For essentially the same reasons that we found no merit to Appellant's first weight of the evidence argument, we find no merit to this argument either. As set forth above, the credibility of witnesses and the weight given to the evidence are issues for the trier of fact.Cole, supra;. GTE Telephone Operations, supra; Reed, supra. While it is evident from the record that the trial court afforded little weight to Dyer's testimony, such action was well within the province of the court and does not amount to an abuse of discretion.
 {¶ 25} The third issue raised by Appellant in her first assignment of error is actually her second assignment of error, which deals with the doctrine of collateral estoppel. While Appellant initially set forth two assignments of error in her brief, she did not separately assign or argue the *Page 16 
second assignment of error in the body of her brief, but instead incorporated it as a sub-issue under her first assignment of error. Accordingly, we will address this argument at this juncture, as part of her first assignment of error.
 {¶ 26} Appellant essentially argues that the trial court did not give "due consideration" to evidence presented at the December 10, 2007, modification of visitation hearing, which had been previously presented and considered by the Franklin County Court of Common Pleas in issuing a civil protection order against Appellee with respect to Appellant and their minor children. Appellant seems to argue that because the Franklin County Court of Common Pleas determined that Appellee posed a serious enough threat to warrant the issuance of a CPO, that the Washington County Court of Common Pleas was bound by those determinations under the doctrine of collateral estoppel.
 {¶ 27} "The doctrines of res judicata and collateral estoppel preclude relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction." Vectren Energy Delivery of Ohio, Inc. v. Pub.Util. Comm., 113 Ohio St.3d 180, 2006-Ohio-1386, 863 N.E.2d 599, ¶ 30 "In Ohio, the doctrine of res judicata is inapplicable on a final judgment rendered by a state court lacking subject matter jurisdiction."Manohar v. Massillon *Page 17 Community Hosp. (1997), 122 Ohio App.3d 715, 718, 702 N.E.2d 937; see, also, 63 Ohio Jurisprudence 3d (1979) Judgments, Section 398, citingState ex rel. Rose v. Ohio Dept. of Rehab. Corr. (2001),91 Ohio St.3d 453, 746 N.E.2d 1103. "A judgment rendered by a court lacking subject matter jurisdiction is void ab initio Patton v. Diemer (1988),35 Ohio St.3d 68, 518 N.E.2d 941, paragraph three of the syllabus.
 {¶ 28} R.C. 3113.31 governs the petition for and issuance of domestic-violence CPOs. It provides that the domestic-relations division of the court of common pleas in counties that have a domestic-relations divisions, and the court of common pleas in counties that do not have a domestic-relations division, have jurisdiction over domestic-violence CPO proceedings. R.C. 3113.31(A)(2) (B). The statute provides a mechanism for the issuance of ex parte orders, pending a full hearing, where, after conducting an ex parte hearing, the court finds that temporary orders are necessary to protect the family or household member from the immediate and present danger of domestic violence. R.C. 3113.31(D)(1).
 {¶ 29} After both ex parte and full hearings, R.C. 3113.31 permits, but does not require, a court to "[temporarily allocate parental rights and responsibilities for the care of, or establish temporary parenting time rights with regard to, minor children, if no other court hasdetermined, or is *Page 18 determining, the allocation of parental rights and responsibilities forthe minor children or parenting time rights" in order to stop domestic violence against family or household members. R.C. 3113.31(E)(1)(d). (Emphasis added).
 {¶ 30} The statute contemplates that the court's orders allocating parental rights and responsibilities in the context of a CPO are temporary. The statute explicitly provides for the termination of those temporary orders "on the date that a court in an action for divorce, dissolution of marriage, or legal separation brought by the petitioner or respondent issues an order allocating parental rights and responsibilities for the care of children or on the date that a juvenile court in an action brought by the petitioner or respondent issues an order awarding legal custody of minor children." R.C. 3113.31(E)(3)(b). Thus, while the statute permits a court to issue temporary orders allocating parental rights and responsibilities in order to stop domestic violence, it does not vest the court with authority to modifythe allocation of parental rights and responsibilities in the CPOproceeding. Signer v. Signer, Cuyahoga App. No. 85666, 2006-Ohio-3580,2006 WL 1918115, at ¶ 19 (Emphasis added). Instead, the only modification of those orders expressly contemplated by the General Assembly is in the context of *Page 19 
a separate divorce, dissolution, legal separation, or juvenile court proceeding.
 {¶ 31} As such, because a motion for reallocation of parental rights and responsibilities, or motion for modification of parenting time, was pending in the Washington County Court of Common Pleas at the time the motion for a CPO was filed in the Franklin County Court of Common Pleas, the Franklin County Court did not have jurisdiction to consider the motion. Rather, the motion should have been brought in the Washington County Court and should have been consolidated with the already pending motion for modification of parenting time. Further, Appellant has failed to make the CPO order a part of the record. Other than quoting it verbatim in her brief, there is no evidence that it was made part of the record below. In light of the foregoing, we have no valid final order with which to apply the doctrine of collateral estoppel. Additionally, we do not believe that the trial court would have been bound, in any event, to another court's determinations regarding credibility of witnesses, as suggested by Appellant in her brief.
 {¶ 32} In the final issue raised under her first assignment of error, Appellant contends that the trial court erred in ordering Appellee's standard visitation with the children to take place in Texas, where the parties' three minor children will be in the care of Appellee's current wife, who is wanted *Page 20 
on a felony charge. Specifically, Appellant argues that the trial court "did not give due consideration of the evidence as pertaining to R.C. 3109.051(D)(2)(7)(9)." Because Appellant failed to request findings of fact and conclusions of law, we disagree.
 {¶ 33} Appellant failed to request findings of fact and conclusions of law relating to the trial court's decision not to modify parenting time, or visitation. Civ. R. 52 provides that "judgment may be general for the prevailing party unless one of the parties in writing requests otherwise." The failure to request findings of fact and conclusions of law results in a waiver of the right to challenge the trial court's lack of an explicit finding concerning an issue. See Pawlus v. Bartrug
(1996), 109 Ohio App .3d 796, 801, 673 N.E.2d 188; Wangugi v.Wangugi (Apr. 12, 2000), Ross App. No. 2531; Ruby v. Ruby (Aug. 11, 1999), Coshocton App. No. 99CA4. "[W]hen a party does not request that the trial court make findings of fact and conclusions of law under Civ. R. 52, the reviewing court will presume that the trial court considered all the factors and all other relevant facts." Fallang v.Fallang (1996), 109 Ohio App.3d 543, 549, 672 NE.2d 730; see, also,In re Barnhart, Athens App. No. 02CA20, 2002-Ohio-6023.
 {¶ 34} In the absence of findings of fact and conclusions of law, we must presume the trial court applied the law correctly and must affirm if *Page 21 
there is some evidence in the record to support its judgment. See, e.g.,Bugg v. Fancher, Highland App. No. 06CA12, 2007-Ohio-2019, at ¶ 10, citing Allstate Financial Corp. v. Westfield Serv. Mgt. Co. (1989),62 Ohio App.3d 657, 577 N.E.2d 383. As the court explained in Pettit v.Pettit (1988), 55 Ohio App.3d 128, 130, 562 N.E.2d 929:
"[W]hen separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with [its] judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence. The message is clear: If a party wishes to challenge the* * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already `uphill' burden of demonstrating error becomes an almost insurmountable `mountain.'" See, also, Bugg; International Converter,Inc. v. Ohio Valley Converting, Ltd. (May 26, 1995), Washington App. No. 93CA34.
 {¶ 35} First, the record is devoid of any evidence that there was an outstanding felony warrant for Appellee's wife's arrest at the time of the *Page 22 
hearing. Although Appellant had a witness scheduled to testify on that point, the witness was unavailable on the day of the hearing and Appellant proceeded with the hearing without offering any testimony on that point. Further, in its final order, the trial court found that Appellee's wife "may have a pending felony warrant against her" and as a result ordered that "Plaintiff shall not permit his current spouse, Sabrina Yanitell, to transport the minor children born as issue of the marriage between Plaintiff and Defendant so long as there is a pending felony warrant against Sabrina Yanitell." Thus, it appears that the trial court did give consideration to the circumstances regarding the alleged warrant and put safeguards in place to address the concern voiced by Appellant that should the current Mrs. Yannitell be stopped by police and arrested on the warrant while transporting the children, that her children might be placed with Childrens Services.
 {¶ 36} Appellant next argues that the trial court did not consider the required best interest factors as set forth in R.C. 3109.051(D) in determining whether to modify Appellee's parenting time, or visitation. Because Appellant failed to request findings of fact and conclusions of law, she has waived any argument related to the trial court's failure to expressly make findings regarding the best interest factors; however, we must still review *Page 23 
the record to determine whether there is some evidence to support the trial court's decision. R.C. 3109.051 governs parenting time rights and provides in section (D) as follows:
"In determining whether to grant parenting time to a parent pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, in establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider all of the following factors:
(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
(2) The geographical location of the residence of each parent and thedistance between those residences, and if the person is not a parent,the geographical location of that person's residence and the distancebetween that person's residence and the child's residence;
(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
(4) The age of the child;
(5) The child's adjustment to home, school, and community;
(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court; *Page 24 
 (7) The health and safety of the child;
(8) The amount of time that will be available for the child to spend with siblings;
(9) The mental and physical health of all parties;
(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;
(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child; *Page 25 
(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
(14) Whether either parent has established a residence or is planning to establish a residence outside this state;
(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;
(16) Any other factor in the best interest of the child." (Emphasis added).
 {¶ 37} In Braatz, supra, the Supreme Court of Ohio held that "[p]ursuant to R.C. 3109.051 (D), the trial court shall consider the fifteen best interest factors enumerated therein, and in its sound discretion shall determine visitation that is in the best interest of the child. The Supreme Court of Ohio, in Braatz, remanded the decision of the trial court where there was no evidence in the record below to suggest that the trial court considered the R.C. 3109.051(D) best interest factors. Braatz at 45. Here, the trial court's entry makes no reference to consideration of the R.C. 3109.051(D) best interest factors.
 {¶ 38} However, after the initial motion which we have construed to be a motion for modification of parenting time rights was filed, a hearing was held on June 14, 2007. Although we were not provided with a transcript of that hearing, the entry issued as a result of that hearing stated that the parties had negotiated a resolution of the matter, agreeing that Appellee *Page 26 
would submit to psychological testing by Dr. Michael Harding for the purpose of determining whether he was suicidal or if he had any other mental health condition that would present a risk of harm to the minor children should he be permitted to exercise unsupervised visitation. As set forth above, the expert testimony before the court at the December 10, 2007, hearing did not indicate that Appellee was suicidal. While it did indicate that Appellee most likely had some mental illness, neither expert testified that he posed a risk of harm to his children or that his visitation with the children should be supervised.
 {¶ 39} Further, at the end of the hearing, the trial court addressed the parties at length and explained its decision to allow unsupervised visitation to take place in Texas. In doing so, the trial court considered the testimony of both experts and followed the recommendation of Appellant's expert, Dr. Paulucci, that Appellee be required to submit a statement of good health from his family physician before exercising any extended, unsupervised visitation. Thus, we conclude that the parties narrowed the best interest factors to be considered by the trial court when they negotiated a resolution to the pending motion by agreeing that Appellee would submit to psychological testing. Contrary to Appellant's contention, there is some evidence to suggest that the trial court properly considered the relevant *Page 27 
R.C. 3109.051(D) factors (2), (7) and (9), which deal with the geographic location of the parents and distance between residences, the health and safety of the children, and the mental and physical health of all parties, respectively. As the mental health of Appellee and the safety of the children were the only pertinent issues at the time of the hearing, and because Appellant failed to request more detailed findings of facts and conclusions of law, the trial court did not err in failing to specifically reference its consideration of the other best interest factors.
 {¶ 40} In light of the fact that Appellant's second assignment of error was already addressed in the context of her first assignment of error, any further consideration of that argument at this juncture is unnecessary. Because we find no merit to any of the issues raised by Appellant, we cannot conclude that the trial court's decision was against the manifest weight of the evidence or that it abused its discretion in denying Appellant's motion for modification of parenting time, or visitation. Accordingly, we affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 28 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. and Kline, J.: Concur in Judgment and Opinion.
[2] Appellant and Appellee upon divorce essentially traded spouses with another couple, Matthew and Sabrina Oaks. At the time of the hearing on the motion at issue, Appellant, Cheyenne Yannitell Oaks, was re-married to Matthew Oaks and Mark Yannitell was re-married to Sabrina Oaks Yannitell.
[3] In section C under the "Argument" portion of her brief, Appellant seems to argue that the results of the evaluation conducted by Dr. Harding were flawed, claiming that the record asserts that Appellee was not truthful during the evaluation. However, a review of the psychological evaluation reveals that the MMPI-2 test "is considered to be one of the most reliable and valid tests for detecting the presence of mental illness and symptoms thereof. This test is of particular use for assessing mental health status because of built-in scales fordetecting both positive and negative malingering (i.e. personsattempting to mask existing mental health problems and persons attempting to feign mental health problems, respectively) and othertypes of deception." Because many of the MMPI-2 items have little or no face validity (i.e., Persons taking the test cannot determine what the items measures [sic] by looking at their content,) it is particularly useful in assessments and evaluations for the court. Indeed it is probably the most widely used and accepted tests for legal matters." (Emphasis added). Based upon this information, and in light of the fact that Appellant failed to challenge the validity of the test results at the trial court level, we find no reason to question the results of the test. Even assuming that Appellee was less than forthright during his evaluation, the test itself appears to take into account attempts of deception. *Page 1