[Cite as *In re Adoption of J.R.J.*, 2019-Ohio-4701.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF J.R.J. (PROPOSED NAME AFTER ADOPTION) | : | |
| | : | |
| | : | Appellate Case No. 2019-CA-12 |
| | : | |
| | : | Trial Court Case No. 18-5-013 |
| | : | |
| | : | (Appeal from Probate Court) |
| | : | |
| | : | |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of November, 2019.

. . . . . . . . . . .

PATRICK J. JANIS, Atty. Reg. No. 0012194 and JEREMY M. TOMB, Atty. Reg. No. 0079664, 124 West Main Street, Troy, Ohio 45373
        Attorneys for Appellants

JOSE M. LOPEZ, Atty. Reg. No. 0019580 and KEVIN M. DARNELL, Atty. Reg. No. 0095953, 18 East Water Street, Troy, Ohio 45373
        Attorneys for Appellee

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Appellant, Dusty Johnson, appeals from the judgment of the Darke County Probate Court dismissing his petition to adopt his wife's minor child, J.R.J.   Johnson contends that the dismissal of the petition was erroneous because the probate court incorrectly determined that J.R.J.'s biological father ("Father") needed to consent to the adoption.   For the reasons outlined below, the judgment of the probate court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On May 21, 2018, Johnson filed a petition to adopt his wife's minor child, J.R.J.   The petition alleged that consent to the adoption by Father was not required because Father had failed, without justifiable cause, to provide more than de minimis contact with J.R.J. for at least one year immediately preceding the filing of the adoption petition.   Father objected to the proposed adoption, and the issue of whether his consent was required for the adoption came before the probate court at an evidentiary hearing on December 4, 2018.

{¶ 3} During the evidentiary hearing, Johnson's wife, who is J.R.J.'s biological mother ("Mother"), testified that she had audio-recorded several telephone conversations she had with Father and that she had reviewed those conversations prior to the hearing. Mother also indicated that the audio-recorded telephone conversations had not been included in the discovery materials provided to Father.   In light of this information, the probate court continued the evidentiary hearing so that the audio-recorded conversations could be provided to and reviewed by Father's counsel.   Once the conversations in question were exchanged and reviewed by counsel, the evidentiary hearing resumed on

March 21, 2019.

{¶ 4} After hearing testimony from Johnson, Mother, Father, and Father's wife, and after reviewing several exhibits, including the audio-recorded telephone conversations, on July 12, 2019, the probate court issued a judgment entry dismissing Johnson's petition for adoption. The dismissal was based on the probate court's finding that Father's consent was required for Johnson to adopt J.R.J. Specifically, the probate court found that Johnson and Mother had failed to establish by clear and convincing evidence that Father's failure to contact J.R.J. during the period in question was without justifiable cause.

{¶ 5} Johnson now appeals from that judgment, raising a single assignment of error for review.

**Assignment of Error**

{¶ 6} Under his sole assignment of error, Johnson contends that the probate court erroneously determined that Father's consent was required for Johnson to adopt J.R.J. We disagree.

{¶ 7} A parent has a fundamental right to care for and have custody of his or her child, and that right is terminated when a child is adopted. *In re Adoption of E.E.R.K.*, 2d Dist. Miami No. 2013 CA 35, 2014-Ohio-1276, ¶ 16. Unless consent is not required under R.C. 3107.07, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by certain parties, including the minor's father. R.C. 3107.06. " 'Any exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the right of [biological] parents to raise and nurture their

children.' " *In re Adoption of M.M.R.*, 2d Dist. Champaign No. 2017-CA-12, 2017-Ohio-7222, ¶ 5, quoting *In re Adoption of Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976). (Other citation omitted.) The party who contends that consent is not required for the adoption has the burden of proof throughout the proceeding. *In re Adoption of M.G.B.-E.,* 154 Ohio St.3d 17, 2018-Ohio-1787, 110 N.E.3d 1236, ¶ 38-39, citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), paragraph four of the syllabus.

{¶ 8} The exceptions for when parental consent is not required for the adoption of a minor are set forth in R.C. 3107.07. Section (A) of that statute states, in pertinent part, that consent to adoption is not required from the parent of a minor when:

> [I]t is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

R.C. 3107.07(A).

{¶ 9} When applying R.C. 3107.07(A), probate courts undertake a two-step analysis. "The first step involves deciding a factual question or questions: whether the parent had failed to provide for the support and maintenance of a minor child or had failed to have more than de minimis contact with the child." *M.M.R.* at ¶ 7. "Probate courts have broad discretion over these factual determinations, which will not be disturbed

absent an abuse of discretion."   (Citations omitted)   *Id*.

{¶ 10} If a probate court finds that a parent failed to provide maintenance and support or failed to have less than de minimis contact with the child, the court's second step is to determine whether a lack of justifiable cause for the failure has been proven by clear and convincing evidence.   "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of [fact] a firm belief or conviction as to the facts sought to be established."   *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 11} "Once the petitioner has established, by clear and convincing evidence, that the biological parent has failed to communicate with or to support the child for the one-year period, the burden of going forward with evidence shifts to the biological parent to show some facially justifiable cause for the failure."   *In re Adoption of R.M.Z.*, 2d Dist. Montgomery No. 23511, 2009-Ohio-5627, ¶ 11, citing *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph two of the syllabus.   "The burden of proof, however, remains at all times with the petitioner, who must establish the lack of justifiable cause by clear and convincing evidence."   *Id.*, citing *Bovett*.

{¶ 12} "The question of whether justifiable cause * * * has been proven in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence."   *M.M.R.*, 2d Dist. Champaign No. 2017-CA-12, 2017-Ohio-7222, at ¶ 8; *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph two of the syllabus.   "In determining

whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice' that there must be a reversal of the judgment and an order for a new trial." *In re Adoption of B.A.H.*, 2d Dist. Greene No. 2012-CA-44, 2012-Ohio-4441, ¶ 21, quoting *Steagall v. Crossman*, 2d Dist. Montgomery No. 20306, 2004-Ohio-4691, ¶ 29.

**{¶ 13}** In this case, there is no dispute that Father failed to have any contact with J.R.J. during the six years immediately preceding the filing of the adoption petition. Since it is undisputed that Father did not have any contact with J.R.J. for the statutorily-required period of time, the only issue to be determined on appeal is whether the weight of the evidence supports the probate court's finding that Johnson and Mother failed to establish by clear and convincing evidence that said failure was without justifiable cause.

**{¶ 14}** With regard to justifiable cause, the Supreme Court of Ohio has held that "[s]ignificant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." *Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613, at paragraph three of the syllabus. In so holding, the Supreme Court refused to adopt a "precise and inflexible meaning" for "justifiable cause," but instead stated that "the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause exists." *Id.* at 367, citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 408 N.E.2d 680 (1980). In this regard, the Supreme Court of Ohio stressed

that "[t]he probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony." *Id.*

**{¶ 15}** Here, the record indicates that Father and Mother, who were never married, entered into an agreed entry as to the care, custody, maintenance, and control of J.R.J. in June 2010. The agreed entry provided Mother with full custody of J.R.J. while awarding Father parenting time on alternating weekends and one weekday evening. The evidence establishes that between 2010 and 2012, Mother and Father struggled with their visitation agreement, as Mother did not get along with Father or Father's wife and was oftentimes uncooperative and temperamental.

**{¶ 16}** The audio-recorded telephone conversations submitted into evidence establish that Mother consistently made visitation difficult for Father during that time.[1] During one of their conversations, Mother and Father discussed a time when Mother refused to let Father see J.R.J. for a period of nine months, which required Father to go to court. *See* Defendant's Exhibit 12 (Transcript of Audio Recordings), p. 93. During that same conversation, Father expressed his desire to attend a doctor's appointment for J.R.J. and to be part of J.R.J.'s life more than just on the weekends, to which Mother eventually responded, "good luck seeing him more than you do cause you're not." *Id.* at 93-94. This is just one of many examples of the obstinate behavior displayed by Mother on the audio recordings.

**{¶ 17}** Mother's obstinate behavior was also evidenced by records from Erma's

---

[1] Although the audio recordings were not time-stamped, the contents of the recordings indicate that they were made around the time J.R.J. was three years old. Given that J.R.J. was born in March 2008, the conversations would have taken place sometime between March 2011 and March 2012.

House, a social services facility that Mother and Father used to assist with visitation exchanges. The records from Erma's House document various instances where Mother made the visitation process difficult for Father. For instance, the records indicate that Mother canceled multiple scheduled visitation exchanges, denied Father make-up-time for missed exchanges, and refused to provide Father with requested information, such as a copy of J.R.J.'s insurance card. The records also indicate that on June 23, 2011, Erma's House staff refused to further assist Mother and Father's visitation exchanges due to Mother's disrespectful behavior towards the staff. In addition to the records from Erma's House, the evidence also establishes that Mother and Father entered into a second agreed entry issued on September 9, 2011, due to Mother denying Father visitation, for which the court awarded Father make-up visitation.

{¶ 18} The crux of the evidentiary hearing, however, concerned Father's admitted absence from J.R.J.'s life since 2012. In an effort to establish no justification for that absence, Mother and Johnson testified that Father had knowledge of their address, phone numbers, and business information, thus making it possible for Father to have contacted J.R.J. Mother testified that Father had not called her since 2011, and she submitted evidence establishing that she had had the same phone number since 2009. Mother further claimed that Father was aware of her e-mail address and could have found her through her photography business, which she advertises online. Johnson additionally testified that Father knew his phone number and could have obtained his contact information online through his electrical contracting company. Mother and Johnson both adamantly denied ever taking any action to prevent Father from contacting J.R.J. during the six-year period in question.

{¶ 19} In contrast, Father testified that after 2012, he had no idea where Mother, Johnson, and J.R.J. lived or how to get into contact with them. The record indicates that prior to September 2011, Mother, Johnson, and J.R.J. resided on Main Street in Gordon, Ohio. Father testified that he was aware of this address and had picked up J.R.J. a few times at that location. However, Father claimed that at the end of 2012, he went to the Gordon residence in an effort to see J.R.J. only to find the residence empty. The record indicates that on September 1, 2011, Mother, Johnson, and J.R.J. moved from the Gordon residence to a residence on Verona-Pitsburg Road in Arcanum, Ohio. Although Mother testified that Father was aware of their new address, Father claimed otherwise. Father testified that he never received notification of the new address and that he had no way to contact Mother because, despite calling her several times in 2012, Mother would not answer her phone or possibly blocked his calls.

{¶ 20} Although Mother presented evidence of Father's wife e-mailing her in 2010, Father testified that he was not familiar with Mother's e-mail address and did not recall ever e-mailing Mother. Father also testified that he knew Mother was a photographer, but was unaware of the name of her photography business. Father also testified that he attempted to research Mother's contact information online, but only found contact information for the old address in Gordon. Father further testified that during the period in question, he knew Johnson only as "Dusty" and could not remember Johnson's last name until he received the adoption petition paperwork. In sum, Father testified that he simply did not know how to find J.R.J. and, other than continuing to pay child support, he took no action on the matter until he received the petition for adoption in 2018.

{¶ 21} Upon review, the only evidence supporting Mother and Johnson's claim that

Father knew of their whereabouts was their own testimony, which the probate court did not find credible. Nothing else in the record demonstrates that Mother or Johnson notified Father of their move from Gordon to Arcanum. Although Mother testified that she was aware of the local rule[2] requiring her to provide written notice of a change of address to both Father and the juvenile court that adjudicated J.R.J.'s visitation, and although Mother claimed to have provided such notice, the relevant juvenile court docket admitted into evidence established that no such notice was ever filed with the court. The probate court believed that Mother's failure to file the notice was crucial, and given the absence of any objective evidence indicating otherwise, the probate court found that Mother moved her residence without notifying Father. We agree that the failure to file the notice supports the notion that Father was not informed of the change of address. The evidence of Mother's behavior with regard to visitation between 2010 and 2012 also supports that notion, as such a failure is consistent with her previous tendency to make visitation difficult for Father.

{¶ 22} On the other hand, Father's only explanation for why he did not take any further action to contact J.R.J. after 2012 was that he simply did not know what to do or how to find J.R.J. The probate court, however, found this excuse plausible. Therefore,

---

[2] Mother and Father's visitation agreement was adjudicated in the Montgomery County Juvenile Court, which has a local rule governing parenting time, i.e., Mont. Co. Juv.R. 5.15. Section (E) of that rule provides: "Notice of Change of Address: Both parents shall give written notice to the other parent immediately upon any change of address and/or phone number, unless a restrictive order has been obtained from the Court. A copy of the notice, including the party's name and case number, shall also be provided to the Juvenile Court Support Office, Juvenile Justice Center 380 W. Second Street, Dayton, Ohio 45422." In addition, R.C. 3109.051(G)(1) requires a "residential parent" who intends to move to a residence other than the one specified in the parenting time order, to file a "notice of intent to relocate" with the court that issued the parenting time order.

Johnson and Mother were required to produce clear and convincing evidence showing that Father's failure to contact J.R.J. was unjustifiable. As previously noted, the probate court found that Johnson and Mother did not satisfy this burden of proof given that they failed to provide any objective evidence establishing that they had notified Father of their move from Gordon to Arcanum. The probate court also found Mother's evidence purporting to show that Father knew her phone number and e-mail address was not persuasive since it would have been easy for Mother to have simply ignored Father's calls and messages.

{¶ 23} Although the probate court's interpretation of the evidence is not the only reasonable interpretation, after reviewing the record and weighing all the evidence and reasonable inferences, we do not find that it was against the manifest weight of the evidence for the probate court to conclude that Johnson and Mother failed to establish by clear and convincing evidence that Father's failure to contact J.R.J. was without justifiable cause. Therefore, because Johnson and Mother did not satisfy their burden to establish a lack of justifiable cause, the probate court correctly determined that Father's consent was required for J.R.J.'s adoption.

{¶ 24} Johnson's sole assignment of error is overruled.

**Conclusion**

{¶ 25} Having overruled Johnson's assignment of error, the judgment of the probate court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.


Copies sent to:

Patrick J. Janis
Jeremy M. Tomb
Jose M. Lopez
Kevin M. Darnell
Hon. Jason R. Aslinger