[Cite as *In re Adoption of E.A.K.*, 2021-Ohio-1835.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

IN THE MATTER OF:     :
             :
THE ADOPTION OF E.A.K.   :  Appellate Case No. 2021-CA-11
             :
             :  Trial Court Case No. 20205018
             :
             :  (Probate Appeal from Common
             :  Pleas Court)
             :
             :

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of May, 2021.

. . . . . . . . . . .

RICHARD HEMPFLING, Atty. Reg. No. 0029986, 10 North Ludlow Street, Suite 200, Dayton, Ohio 45402
   Attorney for Appellant Father

MATTHEW J. BARBATO, Atty. Reg. No. 0076058, 2625 Commons Boulevard, Suite A, Beavercreek, Ohio 45431
   Attorney for Appellee Stepfather

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Father appeals from a judgment of the Clark County Court of Common Pleas, Probate Division, which concluded that his consent was not required for the adoption of his biological daughter, E.A.K. Specifically, the trial court found that Father had failed to have more than de minimus contact with his child, without justifiable cause, for at least one year preceding the filing of Stepfather's petition for adoption. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 1} Mother married Stepfather in August 2018. On May 22, 2020, Stepfather filed a petition to adopt E.A.K., who was then seven years old. In his petition, Stepfather asserted that Father's consent was not required, because (1) Father had failed, without justifiable cause, to provide more than de minimus contact with E.A.K. for at least one year immediately preceding the filing of the petition, and (2) Father had failed, without justifiable cause, to provide for the maintenance and support of E.A.K. for at least one year immediately preceding the filing of the petition. Father objected to Stepfather's petition.

{¶ 2} On December 1, 2020, the trial court held a hearing on whether Father's consent was required, during which both Mother and Father testified and presented various exhibits, including numerous text messages exchanged between them. Because the trial court ultimately held that Father had provided maintenance and support for E.A.K., we focus on the evidence related to Father's contact with E.A.K. The evidence at the hearing established the followings facts.

{¶ 3} E.A.K was born in October 2012. Mother and Father divorced in April 2015

in Preble County, and Mother was named the residential parent. (*See* Exhibit B.) Father was granted parenting time in accordance with the standard order of visitation. Neither parent was required to pay child support. On May 12, 2018, while E.A.K. was in Father's care, Father was arrested for operating a vehicle while under the influence of drugs or alcohol (OVI). In September 2018, he again was arrested for OVI. Father has not seen E.A.K. since his May 2018 arrest.

{¶ 4} After Father's arrests, Mother had concerns about Father's parenting time. On January 21, 2019, counsel for Mother sent correspondence to Father (Exhibit 6), stating in relevant part that Mother had significant concerns about Father's having unsupervised parenting time with E.A.K. The letter asked Father if he would agree to "suspend" his parenting time "for the present time." The letter further stated that if Father were unwilling to do so, Mother would file a motion with the domestic relations court requesting a suspension of his parenting time, that all future parenting time be supervised, and that he have no unsupervised contact with E.A.K. until he passed a hair follicle drug test. Mother testified that she would have been comfortable with Father's continued visitation with E.A.K. if it were supervised. Father did not respond to the letter.

{¶ 5} On June 28, 2019, Mother filed several motions with the Preble County domestic relations court, including a motion to modify parenting time and a motion for a hair follicle drug test. Father did not respond to the motions or appear for a hearing on the motions. On September 27, 2019, the magistrate in the domestic relations court granted Mother's motions, ruling that Father "shall not have parenting time with the parties' child, E.K.[,] until he submits to a hair follicle test and petitions the court for parenting time." (Exhibit C.) The domestic relations court judge adopted the

magistrate's ruling on December 3, 2019. (Exhibit C.) Father acknowledges that he has not taken a hair follicle drug test or filed any motion in the domestic relations court to reinstate his parenting time.

**{¶ 6}** Although Father has not seen E.A.K. since May 2018, Father sent and exchanged numerous text messages with Mother between May 2018 and the spring of 2020. Many of Father's texts simply asked, "What's [E.A.K.] doin [sic]?" (*See* Exhibit A.) Sometimes Mother responded to that question, and sometimes she did not. In a text dated May 23, 2018, shortly after his first arrest, Father wrote, "I'm assuming you are going to not let me have [E.A.K.] until I go through court." (Exhibit 5.) On August 28, 2018, Father asked to call and talk with E.A.K. (Exhibit 4.) Mother did not respond, but Mother testified that Father did not attempt to call.

**{¶ 7}** In October 2018, Father texted that he had gifts for E.A.K.'s birthday that he wanted to drop off. Mother testified that she responded that she was picking up E.A.K. from school and that Father could either leave the gifts at the house with Stepfather or Father could wait until Mother and E.A.K. returned. When Mother and E.A.K. came home, the presents were there, but Father was not. Mother testified that she asked Father if he wanted to call E.A.K. that night, but Father did not call. (Tr. 48.) Father testified, in contrast, that Mother instructed him to leave the presents at the house and that he did not recall being invited to call E.A.K. later that evening.

**{¶ 8}** In the spring of 2019, Father asked for E.A.K.'s baseball schedule, but Mother did not provide it. (Tr. 58-59.) On May 13, 2019, Father asked to FaceTime with E.A.K. (Exhibit 3.) Mother responded, using strong and coarse language, that E.A.K. did not want to speak with him and that she (Mother) would not make E.A.K. do

so. (*Id.*) Again, Father did not attempt to call.

{¶ 9} On October 3, 2019, Father texted Mother stating that he had tried to FaceTime, but after reading the magistrate's decision, he believed he could not contact E.A.K. (Tr. 66.) On January 31, 2020, Father again asked to call E.A.K., which Mother would not allow. (Exhibit 2.) Mother testified that she believed that telephone contact was restricted due to the domestic relations court's suspension of Father's parenting time. (Tr. 38.) On March 12, 2020, Father asked to take E.A.K. shopping (Exhibit 1), which Mother again denied because of the court order suspending his parenting time.

{¶ 10} As stated above, Stepfather filed a petition for adoption on May 22, 2020. After a hearing on whether Father's consent was required, the trial court permitted the parties to file post-hearing memoranda on whether a prior court order suspending visitation by a parent until certain conditions were met constituted justifiable cause for the subsequent lack of contact between the parent and child. Both Father and Stepfather filed memoranda on that issue.

{¶ 11} On January 14, 2021, the trial court concluded that Father's consent was not required. Although the court found that Father had provided for E.A.K.'s maintenance and support during the applicable one-year period (May 22, 2019 to May 22, 2020), the court concluded that Father had failed to provide more than de minimus contact with her for the applicable period of time. Because Father had conceded that he failed to have contact with E.A.K. during the one-year period, the court's analysis focused on whether that failure was justifiable. The court noted that Father blamed Mother for his failure to communicate.

{¶ 12} In concluding that Father's failure to communicate was not justifiable, the

trial court found that Father never submitted to a hair follicle drug test or filed a motion to reinstate his right to parenting time and, instead, "opted to informally attempt to persuade [Mother] to permit him to speak with the child by telephone or by way of Facetime technology." The court noted that the "vast majority" of the text messages between the parents – including Father's last request to visit with E.A.K. – were outside of the applicable one-year time period, i.e., prior to May 22, 2019. The court further found that Father was not precluded by any court order from visiting with E.A.K. between May 22, 2019 and December 3, 2019, when the domestic relations court adopted the magistrate's ruling suspending Father's parenting time with conditions.

{¶ 13} The trial court further found that, between December 3, 2019 and May 22, 2020, Father's "parenting time" was suspended under the domestic relations court order, but he was not prohibited from all contact with E.A.K. The trial court held that where a court order restricts visitation, but does not impose a full no-contact order, such an order "does not afford a natural parent justifiable cause to fail to have contact with the child." The trial court cited *In re Adoption of Mineer*, 4th Dist. Adams No. 03CA768, 2004-Ohio-656, and *In re Adoption of K.K.*, 9th Dist. Lorain Nos. 05CA8849 & 05CA8850, 2006-Ohio-1488. The court further commented:

> The Court thinks it noteworthy that [Father] took no steps to defend the request for the modification, to challenge the court order in question, or to comply with the court order's stated conditions for visitation – that is, to submit a hair follicle test and petition the court for parenting time. Even in the face of [Mother's] less than hospitable rebuffs to [Father's] attempt to talk with his child, [Father] failed to avail himself of the straightforward legal

avenues to see his child. Moreover, the Court finds this failure lasted beyond the one year applicable time period – extending instead a full two years back to the date of the arrest in question in May of 2018. More is expected from a parent seeking to visit their child.

{¶ 14} Father appeals from the trial court's judgment, challenging the court's conclusion that his failure to provide more than de minimus contact was not justifiable. (Stepfather does not cross-appeal the court's determination regarding Father's provision of maintenance and support.)

### III. De Minimus Contact / Justifiable Cause

{¶ 15} In his sole assignment of error, Father claims that the trial court erred in holding that his consent to the adoption was not necessary. He argues that the manifest weight of the evidence at the hearing demonstrated a "history by [Mother] of 'significant interference' with communication or, at the very least, 'significant discouragement of such communication' " between Father and E.A.K.

{¶ 16} A parent has a fundamental right to care for and have custody of his or her child, and that right is terminated when a child is adopted. *In re Adoption of J.R.J.*, 2d Dist. Darke No. 2019-CA-12, 2019-Ohio-4701, ¶ 7. "Because adoption acts to permanently terminate parental rights, the written consent of a minor child's parents is ordinarily required in order to proceed with the adoption action." *In re L.R.O.*, 2d Dist. Darke No. 2019-CA-19, 2020-Ohio-3200, ¶ 7.

{¶ 17} R.C. 3107.07 provides exceptions to the consent requirement. *Id*. Of relevance here, R.C. 3107.07(A) provides that consent to adoption by a minor's parent is not a requirement when "it is alleged in the adoption petition and the court, after proper

service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause [(1)] to provide more than de minimis contact with the minor or [(2)] to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

{¶ 18} R.C. 3107.07(A) is written in the disjunctive. Consequently, the failure, without justifiable cause, to provide either more than de minimus contact or maintenance and support for the one-year time period is sufficient to eliminate the need for consent. *Id.*

{¶ 19} Probate courts employ a two-step analysis when applying R.C. 3107.07(A). *In re L.R.O.*, 2d Dist. Darke No. 2019-CA-19, 2020-Ohio-3200, at ¶ 9, citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 23. First, the court must determine whether the parent failed to have contact or to provide maintenance and support for a period of at least one year immediately preceding the filing of the adoption petition. *Id.* "The probate court exercises discretion in making these determinations, and thus, an appellate court applies an abuse of discretion standard when reviewing the probate court's decision." *In re L.R.O.* at ¶ 9, citing *In re Adoption of M.B.* at ¶ 21.

{¶ 20} If the probate court finds the parent failed to provide either more than de minimis contact or maintenance and support, the court then must determine whether justifiable cause for the failure has been proven by clear and convincing evidence. *Id.*, citing *In re Adoption of M.B.* at ¶ 23. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases,

and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *In re L.R.O.* at ¶ 8. We have held that justifiable cause "may be demonstrated by events either before or during the one year prior to the filing of the petition or by a combination of both." *In re C.D.G.* at ¶ 15; *In re the Adoption of A.L.E.,* 2d Dist. Clark Nos. 20205012 & 20204013, 2021-Ohio-972, ¶ 40.

{¶ 21} The term "justifiable cause" is not defined in R.C. 3107.07. The Supreme Court of Ohio has held that "[s]ignificant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985), paragraph three of the syllabus. Nevertheless, the Ohio Supreme Court has refused to ascribe a "precise and inflexible meaning" to "justifiable cause." *In re C.D.G. and N.A.G.*, 2d Dist. Montgomery Nos. 28664 & 29665, 2020-Ohio-2959, ¶ 18, citing *Holcomb* at 367.

{¶ 22} A parent's efforts to enforce his or her parental rights, prior to the filing of a stepparent's adoption petition, is a relevant consideration when evaluating justifiable cause. *In re Adoption of M.G.B.-E.,* 154 Ohio St.3d 17, 2018-Ohio-1787, 110 N.E.3d 1236, ¶ 43; *In re Adoption of R.A.H.,* 2d Dist. Champaign No. 2020-CA-32, 2021-Ohio-1667, ¶ 14. In addition, we recently held that a protection order prohibiting a parent from contact with a minor child "does not necessarily provide justifiable cause for the failure to have contact and does not necessarily require a finding there is not justifiable cause for the failure." *In re Adoption of R.A.H.* at ¶ 21. We emphasized that the probate court

must consider "*all* relevant circumstances," including "the facts surrounding the issuance of and the child's inclusion in the protection order, the parent's efforts, if any, to modify the protection order to obtain parenting time, and any other facts deemed relevant by the trial court." (Emphasis sic.) *Id.*

{¶ 23} "The question of whether justifiable cause * * * has been proven in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *In re Adoption of M.M.R.*, 2d Dist. Champaign No. 2017-CA-12, 2017-Ohio-7222, ¶ 8; *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph two of the syllabus. "In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice' that there must be a reversal of the judgment and an order for a new trial." *In re Adoption of B.A.H.*, 2d Dist. Greene No. 2012-CA-44, 2012-Ohio-4441, ¶ 21, quoting *Steagall v. Crossman*, 2d Dist. Montgomery No. 20306, 2004-Ohio-4691, ¶ 29.

{¶ 24} The petitioner has the initial burden of establishing that the biological parent has failed to communicate with or support the child for the one-year period. If the petitioner meets that burden, the burden of going forward with evidence shifts to the biological parent to show facially justifiable cause for the failure. *In re C.D.G.*, 2d Dist. Montgomery Nos. 28664 & 28665, 2020-Ohio-2959, ¶ 4, citing *In re Adoption of J.R.J.*, 2d Dist. Darke No. 2019-CA-12, 2019-Ohio-4701, at ¶ 12. However, the party who contends that consent is not required for the adoption (in this case, Stepfather) has the

burden of proof throughout the proceeding. *In re Adoption of J.R.J.* at ¶ 7.

{¶ 25} Upon review of the record, we cannot conclude that the trial court's finding that Father's consent was not required was against the manifest weight of the evidence. Father acknowledged that he had not seen E.A.K. since his May 2018 arrest, which occurred two years prior to the filing of Stepfather's petition. Accordingly, the primary question was whether his failure to communicate with E.A.K. was justifiable.

{¶ 26} The text messages reflect that Mother's relationship with Father was acrimonious following Father's May 2018 arrest. Nevertheless, during the two-year period between the arrest and the filing of Stepfather's petition for adoption, Mother and Father exchanged text messages about a variety of matters, including money for E.A.K., the marital home in which Father continued to live, and E.A.K.'s activities. Father was aware of where E.A.K. lived, and he had dropped off birthday presents for E.A.K. at Mother's home in October 2018.

{¶ 27} However, Father made only sporadic requests to talk with E.A.K. The exhibits reflect three express requests by Father to speak with E.A.K. on August 28, 2018; May 13, 2019; and January 31, 2020. Father testified that, in October 2019, he texted Mother stating that he had tried to FaceTime, but after reading the magistrate's decision, he believed he could not contact E.A.K. (Tr. 66.) He also testified to wanting to talk with E.A.K. shortly after his birthday in March 2019. (Tr. 57.) Father sought to take E.A.K. shopping in March 2020, but Mother reasonably denied that request, given that such contact would have violated the domestic relations court's order suspending Father's parenting time. Although Father texted "What's [E.A.K.] doin?" many times and showed an interest in E.A.K. and her activities, the trial court reasonably found that those

texts were not requests to visit with E.A.K.

{¶ 28} The record reflects, and the trial court found, that Mother rebuffed Father's attempts to talk to E.A.K. Nevertheless, Father never made any efforts to enforce his parental rights under the divorce decree, he never responded to Mother's attorney's letter in January 2019, and he did not respond to Mother's subsequent motions in the domestic relations court. After Father's parenting time was suspended by the domestic relations court, Father was aware that he would need to have a hair follicle drug test to petition the domestic relations court to reestablish his parenting time. In the year between the domestic relations court's adoption of the magistrate's decision (December 3, 2019) and the hearing on whether Father's consent was required for adoption (December 1, 2020), Father had not taken such a test. Father hired an attorney after the suspension of his parenting time, but he was not aware of any motions to have the suspension lifted or to reestablish a relationship between E.A.K. and him.

{¶ 29} With the evidence before us, we cannot conclude that the trial court "lost its way" in holding that Father did not have justifiable cause for his failure to have more than de minimus contact with E.A.K. Accordingly, the trial court did not err in deciding that Father's consent to the adoption was not required.

{¶ 30} Father's assignment of error is overruled.

### IV. Conclusion

{¶ 31} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, P. J. and WELBAUM, J., concur.

Copies sent to:

Richard Hempfling
Matthew J. Barbato
Hon. Richard P. Carey