[Cite as *In re Adoption of D.W.- E.H.*, 2022-Ohio-528.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE ADOPTION OF D.W.-E.H. :
 :  No. 110705
A Minor Child     :
 :
[Appeal by C.W.H. Stepfather] :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 24, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2021-ADP-09770

---

### *Appearances:*

Taft Stettinius & Hollister, L.L.P., Jill Friedman Helfman,
and Mary Kate Moller, *for appellant-petitioner*.

Peter A. Russell, *for appellee-respondent*.

---

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Petitioner-appellant C.W.H.[1] (hereinafter "petitioner") appeals from the probate court's July 22, 2021 judgment in this adoption proceeding. In its judgment, the trial court found that while respondent-appellee B.D.B. (hereinafter

---

[1] In accordance with this court's policy, the parties' initials are used for their privacy interest.

"father") failed to communicate with his child D.W.-E.H. (hereinafter "the child") for at least one year preceding the filing of petitioner's adoption petition, father had justifiable cause for such failure. After review of the law and facts as set forth below, we affirm.

## I. Procedural History

{¶ 2} On March 30, 2021, petitioner filed a petition for adoption of the child, who was five years old at the time.[2] Petitioner alleged that the consent of father was not required to proceed with the adoption on the ground that father failed, without justifiable cause, to have any contact with the child for the one-year period immediately preceding the filing of the petition, that is between March 30, 2020, and March 30, 2021.

{¶ 3} Father's counsel filed an objection to the petition on July 9, 2021. On July 15, 2021, the trial court held a "consent hearing" to determine whether father's consent was required to proceed with the adoption. The court issued its decision on July 22, 2021, finding that father had no contact with the child for the one year preceding the filing of petitioner's adoption petition, but that father had justifiable cause for his failure to contact the child.

## II. Factual History

{¶ 4} The following facts were adduced at the July 15, 2021 consent hearing. The child was born to J.H. (hereinafter "mother") and father while mother

_____

[2] The child's date of birth is December 26, 2015.

was married to petitioner. Father had his paternity established shortly after the child's birth.

{¶ 5} Initially, father would see the child often. He testified that he was the child's care provider during the day when mother worked — mother would bring the child to his house — but petitioner was unaware of the arrangement. Father did not like the secretive arrangement and told mother that she had to tell petitioner because he (father) wanted to initiate a proceeding in juvenile court to obtain visitation rights. Mother told petitioner and, thereafter, according to father, mother told him, "[a]ll communication has to stop, and it would be handled through the court." Father hired an attorney and initiated a proceeding in juvenile court, through which a visitation schedule and support obligations were established for him. Father testified that the proceeding exhausted his savings.

{¶ 6} The record demonstrates that, at all relevant times, all the parties lived in Parma, Ohio. Generally, when father would exercise his visitation rights, mother would drop the child off to father at a McDonald's restaurant located in Parma. The restaurant was approximately four miles from father's house, which, according to father, was a 10- to 15-minute drive from his house.

{¶ 7} Father testified that he had a car accident in 2019 and, thereafter, no longer had a vehicle; he mainly relied on public transportation as his mode of transportation. He testified that sometimes friends would drive him places and sometimes he would get an Uber driver for medical appointments because he would get reimbursed by his insurance provider. According to father, it took anywhere

from 30 minutes to two-and-a-half hours to get to the McDonald's by bus from his house because the trip required him to transfer buses.

{¶ 8} Father testified that he lost his job in early 2020, when his employer downsized due to the ramifications of the global Covid-19 pandemic. Father also testified that he had medical issues, including diabetes and high blood pressure.

{¶ 9} Mother testified that father's court-ordered visitation schedule afforded him 156 days a year of visitation with the child. She kept track of the number of days father cancelled his visitation with the child since 2017. In 2017, father cancelled 11 days; in 2018, he cancelled 18 days; in 2019, he cancelled 125 days; and in 2020, he cancelled all except one day, that being February 6, 2020. The record demonstrates that father had no visitation with the child at any time in 2021 leading up to the July 2021 hearing. Father agreed that his last visit with the child was on February 6, 2020. He paid mother $10 to bring the child to him for that visitation.

{¶ 10} The record demonstrates that father had mother's telephone number and knew where she lived. He scheduled visitation time twice in October 2020 but cancelled both visits. From October 19, 2020, to the date of the July 15, 2021 trial, father never requested to exercise his visitation time. From October 19, 2020, to July 15, 2021, father did not contact mother to request to call, text, or communicate via any technological platform (i.e., video chat, FaceTime) with the child. He did not send any mail to the child, including on his fifth birthday or holidays. Father testified that he used Facebook to video chat with people, but Mother blocked him

on Facebook. Mother testified that Father never requested to be "friends" on Facebook.

{¶ 11} Father contended that his lack of transportation and health problems prevented him from visiting with his son. Father testified that the lack of transportation was particularly prohibitive after universal awareness of the Covid-19 virus and a subsequent "stay-at-home order" was implemented by the Ohio Director of Health, effective March 23, 2020.[3] Father testified that he did not want to get the child sick.

{¶ 12} Mother admitted that she was hesitant to have the child travel on a bus, or be out in public spaces in general, because of the pandemic and the child's tendency to "touch everything." She testified that she only took the child out in "emergency situations." Mother described her state of mind regarding Covid-19 as "fearful" and testified that she watched the child "like a hawk." According to father, mother's concern about the child being out in public persisted after the stay-at-home order was no longer effective.

{¶ 13} Father testified that mother would not answer his phone calls — a point mother conceded — but she would generally respond to his text messages. In June 2020, father texted mother requesting that his visitation with the child resume

---

[3] The stay-at-home order mandated, among other things, that Ohio residents stay at home or their place of residence except for "essential activities"; "essential governmental functions"; and "essential business and operations." Transporting children under a custody order was deemed an essential activity. *See* Director's Stay At Home Order Ohio Department of Health, https://coronavirus.ohio.gov (accessed January 18, 2022). The order expired in May 2020.

because businesses were starting to reopen and activities were starting to resume. Mother responded as follows:

> Well everything isn't open. And the things that are there are precautions to follow. These precautions are not suggestions when it comes to [the child]. He does not completely understand the virus and what all we have to do to keep safe. I have not taken him anywhere unless it was absolutely necessary because he likes to touch everything and if his hands aren't then washed he could get sick. He does not know how to use hand sanitizer, but it worries me because he could get sick by putting his hands in his mouth. Yes, the stay at home order was lifted, but that doesn't mean things are back to normal.

{¶ 14} No visitation was scheduled. Father contacted mother again in July 2020, and stated that "this virus could go until next year some time. I think we just need to come up some visitation safety plan and resume visitation." Mother responded, "I think part of the safety plan would be not while numbers are rising." Mother reiterated her concern about the child "touching everything," and not understanding the virus. She further stated, "I don't think a park is a good place right now because they are not being cleaned." Again, no visitation was scheduled.

{¶ 15} Father contacted mother in September 2020 and told mother he believed the situation created by the pandemic was the "new normal," and he was "ready for visitation to start back up with safety measures in place" for the child. Mother responded,

> [j]ust because you may see it as the new normal does not mean it is any less serious as it was back in March. Yes, things are opening back up but when it comes to [the child's] safety I will not turn a blind eye to it. What safety measures do you think there should be? I would like details. What do you think a visit would look like now? Do you have reliable transportation? So you are ready; did you consider what [the child] wants or is ready for?

{¶ 16} Father responded to mother's concerns and detailed the safety measures he would take with the child and told mother that he "always takes [his son's] feeling into consideration as to what is best for him." Father further told mother that visitation was necessary for him and the child to continue their relationship. Father also told mother that he did not have a vehicle and would be "open if you would like to bring and pick him up."

{¶ 17} A visit was arranged, but father cancelled it because the child was congested and father did not "want him coming out congested." A rescheduled visit was cancelled by father because father was sick, and mother testified that he never contacted her again after October 2020.

{¶ 18} Mother admitted that in June 2019, she sent a letter to father asking him for consent for petitioner to adopt the child and offering him relief from back child support in exchange. Father did not respond to the letter. He testified that he did want to "lose his son" then or at the time of the consent hearing. Father contended that his lack of contact with the child was because of the pandemic. He explained,

> The pandemic had me scared for myself, for my son. It drew concern for me, you know. So, we didn't know very much about it, so * * * I just wasn't going to bring my son out. I knew his mom was a stay-at-home mom. I knew that she really didn't have to really come out [except] for probably just emergencies. So I was comfortable with [the child] being there and not coming out.

{¶ 19} On this record, the trial court found that father had no contact with the child for the one year preceding the filing of petitioner's adoption petition, and

that father had justifiable cause for his failure to contact the child. Petitioner appeals, and raises three assignments of error:

> Assignment of Error No. 1: The trial court erred when it found that [father] had justifiable cause for failing to have any contact with [the child] in the one year preceding the filing of the March 30, 2021 petition for adoption.

> Assignment of Error No. 2: The trial court erred and misstated the testimony when it found that the parties "acknowledged" that [mother] blocked [father] on Facebook, and that she "refused" telephone contact with him when there is no such evidence in the record, thereby making the erroneous conclusion that justifiable cause existed.

> Assignment of Error No. 3: Because [father] failed to timely file his objections pursuant to R.C. 3107.07(K), the trial court erred when it found that his consent to the adoption was required.

## III. Law and Analysis

{¶ 20} R.C. Chapter 3107 governs adoption proceedings in the state of Ohio. *In re Adoption of Kuhlmann*, 99 Ohio App.3d 44, 49, 649 N.E.2d 1279 (1st Dist.1994). An adoption proceeding is a two-step process, which involves a "consent" phase and a "best interest" phase. *In re Adoption of Jordan*, 72 Ohio App.3d 638, 645, 595 N.E.2d 963 (10th Dist.1991); R.C. 3107.14(C); *In re Adoption of Walters*, 112 Ohio St.3d 315, 2007-Ohio-7, 859 N.E.2d 545, ¶ 5.

{¶ 21} The Ohio Supreme Court has held that "[a] trial court's finding pursuant to R.C. 3107.07 that the consent to an adoption of a party described in R.C. 3107.06 is not required is a final appealable order." *In re Adoption of Greer*, 70 Ohio St.3d 293, 638 N.E.2d 999 (1994), paragraph one of the syllabus; *see also In re Adoption of Johnson*, 72 Ohio St.3d 1217, 651 N.E.2d 429 (1995), following *Greer*. Thus, the fact that the probate court has not yet proceeded to the "best

interest" phase of the adoption does not preclude appellate review of the probate court's decision in the "consent phase." *In re Adoption of B.M.S. & J.C.S.*, 10th Dist. Franklin No. 07AP-236, 2007-Ohio-5966, ¶ 16, citing *Greer*.

**Failure to Contact; Justifiable Cause**

{¶ 22} "Because adoption acts to permanently terminate parental rights, the written consent of a minor child's parents is ordinarily required in order to proceed with the adoption action." *In re Adoption of A.L.S.*, 2018-Ohio-507, 106 N.E.3d 69, ¶ 13 (12th Dist.).

{¶ 23} R.C. 3107.07(A) sets forth the following exception relative to this case:

A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶ 24} In the case sub judice, the trial court found by clear and convincing evidence that father failed to have contact with the child for the year preceding petitioner filing the adoption petition. The court found that there was not clear and convincing evidence that father failed without justifiable cause to have such contact, however.

{¶ 25} In the first assignment of error, petitioner contends that the trial court erred in its justifiable cause finding. In the second assignment of error, petitioner contends that the court's justifiable cause finding was based on the court's

erroneous finding that the parties acknowledged that mother blocked father on Facebook and that mother refused telephone contact with father. The assignments of error are interrelated and we consider them together.

{¶ 26} Petitioner had the burden of proving by clear and convincing evidence that father's failure to have contact with the child was without justifiable cause. *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph one of the syllabus. A probate court's justifiable cause decision will not be disturbed on appeal unless that determination is against the manifest weight of the evidence. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 24, citing *In re Adoption of Masa*, 23 Ohio St.3d 163, 164, 492 N.E.2d 140 (1986), paragraph two of the syllabus.

{¶ 27} In general, a trial court's judgment should not be overturned as being against the manifest weight of the evidence if some competent and credible evidence supports that judgment. *Yannitell v. Oaks*, 4th Dist. Washington No. 07CA63, 2008-Ohio-6271, ¶ 16, citing *C.E. Morris v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). Furthermore, factual findings must be given great deference on review because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations to weigh the credibility of the proffered testimony. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶ 28} Upon review of the record, the probate court had sufficient evidence to determine that father had justifiable cause for his failure to have contact with the child for the year preceding the filing of the adoption petition.

{¶ 29} In regard to telephonic communication between father and mother, petitioner contends that an exhibit introduced at the consent hearing established that father did not call mother and, thus, that the trial court's finding that mother would not answer father's calls was erroneous. The exhibit demonstrated that from March 2020 to March 2021, no calls were made from father's cell phone to mother's cell phone. But father testified that he did not call mother because, historically, mother would not answer his calls. Mother acknowledged that that was true, explaining, "[i]n the past I did not answer [father's calls], simply because I didn't want the opportunity for him to say * * * that I said something that I didn't, so I left everything to text messages."

{¶ 30} The trial court was not restricted to focusing solely on the one-year statutory period in making its determination as to justifiable cause. *In the Matter of C.D.G.*, 2d Dist. Montgomery Nos. 28664 and 28665, 2020-Ohio-2959, ¶ 15. Thus, "justifiable cause may be demonstrated by events either before or during the one-year period prior to the filing of the petition or a combination of both." *In re J.M.M.*, 3d Dist. Henry Nos. 7-20-06 and 7-20-07, 2021-Ohio-775, at ¶ 25. In the case sub judice, the court considered mother and father's telephonic history and properly found that mother and father did not communicate with each other by

calling; rather, their telephonic communication with each other was limited to text messaging.

{¶ 31} In regard to Facebook, father testified that mother "took [him] off" of and "blocked" him on Facebook, which was the way he video chatted with people. It is true that mother never acknowledged that she "blocked" father on Facebook. Rather, mother testified that father never asked her if they could be Facebook friends. Thus, the trial court's finding that "[t]he parties acknowledged that [mother] blocked [father] from communicating with her on Facebook" was not supported by the testimony.

{¶ 32} The trial court's justifiable cause finding was not based solely on the parties' Facebook status, however. Rather, the trial court relied on numerous other facts in finding that father had justifiable cause for his lack of contact with the child.

{¶ 33} Specifically, the trial court found that the Covid-19 pandemic was the reason father suspended his visits with the child. The record supports that finding. Mother was "fearful" about the pandemic and watched the child "like a hawk." She testified that except for emergencies, she did not take the child out of her house.

{¶ 34} Father likewise wanted to keep the child safe and believed that that would occur with the child being at home with mother under the stay-at-home orders. The record further demonstrates that when pandemic-related restrictions were lifted, father contacted mother and attempted to resume visitation with the child. While mother did not "outright" deny father's request, she expressed

continuing concerns about the pandemic, especially given that the child "touched everything."

{¶ 35} The trial court also found that the "circumstances of [father's] relationship with [mother] and Petitioner is also relevant to the issue of justifiable cause." The record supports this finding. The child was conceived as a result of an affair between mother and father while mother was married to petitioner. Mother and father conducted their affair, at least to some degree, at the home where mother, petitioner, and the child resided at all relevant times. Father testified that, because of these facts, he did not go to mother's house and did not send mail there either. Moreover, because of the young age of the child, the child did not have his own phone; phone communication therefore had to occur through mother. Mother admitted that she would not answer father's calls — she would only text message with him.

{¶ 36} The trial court also considered father's financial status. Father testified that he was involved in a car accident in 2019, and was not able to afford a replacement vehicle, and in the beginning of 2020, he was downsized from his job. Father explained that he exhausted his savings establishing paternity and visitation and, although having significant difficulty communicating with mother or child to arrange for visitation, he was unable to pursue further legal action to enforce his visitation rights. Despite his financial situation, father rejected mother's financial enticement to him to consent to petitioner adopting the child, stating he did not want to "lose his son."

{¶ 37} Petitioner contends that the trial court was not permitted to consider factors other than father's communication with the child. He cites *In re Adoption of Hedrick*, 110 Ohio App.3d 622, 674 N.E.2d 1256 (8th Dist.1996), in support of his contention. In *Hedrick*, this court stated that "[t]he standard of proof to establish justifiable cause for the non-custodial parent's failure to communicate with the child is '* * * significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication * * *.'" *Id.* at 625, quoting *In re Adoption of Holcomb*, 18 Ohio St. 3d 361, 367-368, 481 N.E.2d 613 (1985).

{¶ 38} *Hedrick* leaves out a key word the Supreme Court used in *Holcomb*. Specifically, the *Holcomb* Court stated that "[t]ypically, a parent has justifiable cause for non-communication if the adopting spouse has created substantial impediments to that communication." (Emphasis added.) *Id.* at 367.[4] Interference by the custodial parent was the primary reason for the lack of contact by the noncustodial parent in *Hedrick*, while in this case a variety of factors contributed to father's lack of contact.

{¶ 39} The *Holcomb* Court acknowledged that "'justifiable cause' is imprecise and has been variously defined by the courts below." *Id.* Because of the imprecision in defining justifiable cause, the court stated that "the better-reasoned

---

[4] The Ohio Supreme Court reiterated this standard in *In re Adoption of M.G.B.-E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, 110 N.E. 3d 1236, ¶ 39.

approach would be to leave to the [lower] court as finder of fact [on] the question of whether or not justifiable cause exists." *Id.*

{¶ 40} Further, in *Holcomb*, the noncustodial parent alleged that the custodial parent significantly interfered with the noncustodial parent's communication with the children. Addressing that specific ground, the court stated

> [a]s guidance to the probate courts, we state additionally that *significant* interference by a custodial parent with communication between the non-custodial parent and the child, or *significant* discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child.

(Emphasis sic.) *Id.* at 367-368.

{¶ 41} Thus, *Holcomb* considered a specific allegation of "significant interference or significant discouragement" of communication as justifiable cause for a noncustodial parent's failure to have contact with a child. It has been judicially recognized, however, that there are other circumstances aside from a custodial parent's interference with or discouragement of communication with a noncustodial parent's attempt to communicate with a child that can create justifiable cause.

{¶ 42} In *In re Adoption of A.K.*, Slip Opinion No. 2022-Ohio-350, the Supreme of Ohio held that a parent's lack of contact with a child pursuant to a court-ordered "no contact order" constituted justifiable cause for a parent's failure to communicate with the child. In so finding, the court relied on *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, wherein it held that "a parent's nonsupport of his or her minor child pursuant to a judicial decree does not

extinguish the requirement of that parent's consent to the adoption of the child." *Id.* at ¶ 1.

{¶ 43} Demonstrating in a properly submitted petition by clear and convincing evidence a custodial parent's interference with or discouragement of a child's communication with a noncustodial parent is one way to establish justifiable cause, but it is not the only way.

{¶ 44} Further, petitioner contends that father could have had his visitation order revisited so that he could have had contact with the child. But as the court held in *In re Adoption of A.K.*,

> [petitioners] have the burden to establish that there was no justifiable cause for [the noncustodial parent's] failure to contact [the child]. * * * For this court to impose some additional requirement on a parent that they must attempt to modify the relevant court order would be an inappropriate shift of the petitioner's burden to the parent, in contravention of R.C. 3107.07.

*Id.* at ¶ 20.

{¶ 45} Just as the Ohio Supreme Court observed with lamentation in *In re Adoption of M.G.B.-E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, this court believes father "could undoubtedly have done more to protect and nurture his relationship with his [child]." *Id.* at ¶ 44. "But strictly construing R.C. 3107.07(A) in Father's favor, and remaining cognizant that parents facing the termination of their parental rights must be afforded every protection the law allows, *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997)," we conclude that the lower court did not err in determining that father had justifiable cause for the failure to contact the child. *In re Adoption*

*of M.G.B.-E.* at ¶ 43.   The lower court was in the best position to determine the credibility of witnesses and weigh the evidence.  The novelty of the global Covid-19 pandemic, father's medical conditions, loss of work and transportation, exhaustion of resources in prior litigation, along with the other specific factors discussed above, demonstrate that the trial court's justifiable cause finding was supported by some competent and credible evidence.   The first and second assignments of error are therefore overruled.

**Father's Objection**

{¶ 46} In the third assignment, petitioner contends that father failed to timely file his objection, obviating the need for his consent under R.C. 3107.07(K).

{¶ 47} The record reflects that petitioner failed to raise the timeliness of father's objection at the trial-court level.  It is well settled that a party may not raise any new issues or legal theories for the first time on appeal.  *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975).  Thus, a litigant who fails to raise an argument before the trial court forfeits the right to raise that issue on appeal. *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St. 3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 30.

{¶ 48} Appellate courts may consider a forfeited argument using a plain-error analysis.  *See Risner v. Ohio Dept. of Natural Resources*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 27.  For the plain error doctrine to apply, the party claiming error must establish (1) that "'an error, i.e., a deviation from a legal rule'" occurred, (2) that the error was "'an obvious defect in the trial proceedings,'" and (3)

that this obvious error affected substantial rights, i.e., the error "'must have affected the outcome of the trial.'" *State v. Rogers*, 143 Ohio St. 3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001 (1982) ("A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings.").

{¶ 49} The plain error doctrine is not readily invoked in civil cases. Instead, an appellate court "must proceed with the utmost caution" when applying the plain error doctrine in civil cases. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). The Ohio Supreme Court has set a "very high standard" for invoking the plain error doctrine in a civil case. *Perez v. Falls Fin. Inc.*, 87 Ohio St.3d 371, 375, 721 N.E.2d 47 (2000). Thus, "the doctrine is sharply limited to the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss* at 122.

{¶ 50} Because petitioner failed to raise the issue of the timeliness of father's objection at the trial-court level, he has waived review of the issue on appeal. The third assignment of error is therefore overruled.

{¶ 51} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

CORNELIUS J. O'SULLIVAN, JR., JUDGE

MICHELLE J. SHEEHAN, J., CONCURS;
KATHLEEN ANN KEOUGH, P.J., DISSENTS (WITH SEPARATE OPINION)

KATHLEEN ANN KEOUGH, P.J., DISSENTING:

{¶ 52} Respectfully, I dissent.

{¶ 53} Initially, I note that the majority rejects petitioner's argument that the standard for justifiable cause announced in *Holcomb* — significant interference by a custodial parent with communication between the noncustodial parent and the child, or significant discouragement of such communication — is the only way to demonstrate justifiable cause. Majority opinion at ¶ 43. The majority concludes that although significant interference by a custodial parent with the child's communication with the noncustodial parent is one way to establish justifiable cause, it is not the only way. *Id.* Even assuming that to be true, the majority's reliance on *In re Adoption of A.K.*, Slip Opinion No. 2022-Ohio-350, as support for its conclusion is misplaced.

{¶ 54} In *In re Adoption of A.K.*, 2020-Ohio-3279, 155 N.E.2d 239 (8th Dist.), this court held that a parent's lack of contact with a child pursuant to a court-ordered no-contact order constituted justifiable cause for a parent's failure to communicate with the child. The Ohio Supreme Court recently affirmed this court's decision in *In re Adoption of A.K.*, Slip Opinion No. 2022-Ohio-350.

{¶ 55} A court undertakes a two-step analysis when applying R.C. 3107.07(A) — whether a parent has failed to communicate with or failed to support a child for a minimum of one year preceding the filing of the adoption petition and, if so, whether there was justifiable cause for the failure. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 23. But in *In re Adoption of A.K.*, the Supreme Court concluded there is an "automatic exemption" from the two-step justifiable-cause inquiry under R.C. 3107.07(A) where a court order specifically orders a parent to have no contact with his child. *Id.* at ¶ 16-17. The court applied a three-part test that asks (1) what the law or judicial decree required of the parent during the year immediately preceding either the filing of the adoption petition; (2) whether during that year the parent complied with his obligation under the law or judicial decree; and (3) if the parent did not comply with his obligation during that year, there was justifiable cause for that failure. *Id.* at ¶ 14. The court concluded that its analysis ended at the first step of the three-part analysis, without reaching the justifiable cause step, because the no-contact order mandated that the father do just what was ordered — have no contact or communication with his children. *Id.* at ¶ 15. Accordingly, the court found that (1) a parent's right to consent to the

adoption of his child is not extinguished under R.C. 3107.07(A) when the parent did not have more than de minimis contact with the minor child during the statutory period because the parent was acting in compliance with a no-contact order that prohibited all communication and contact with the child; and (2) the father's consent was therefore required for the adoption proceedings to go forward. *Id.* at ¶ 21.

{¶ 56} Because the Supreme Court did not consider the justifiable cause question in *In re Adoption of A.K.,* it should not be cited as a case demonstrating that a circumstance other than a custodial parent's significant interference with or discouragement of communication with a noncustodial parent's attempt to communicate with a child can create justifiable cause under R.C. 3107.07(A). The majority's citation to *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, is likewise misplaced because B.I. relied upon the same three-part test utilized by the Supreme Court in *In re Adoption of A.K.* and similarly resolved the matter at the first step of the three-part test, without conducting any justifiable cause analysis under R.C. 3107.07(A). *Id.* at ¶ 14.

{¶ 57} With regard to the justifiable cause finding in this case, I would reverse the trial court's determination that father had justifiable cause for not contacting the child for at least one year preceding the filing of petitioner's adoption petition because the court's determination is against the manifest weight of the evidence. In determining whether a judgment is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and

all reasonable inferences, consider witness credibility, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment should be reversed and a new trial should be ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other." (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 58} The majority concludes that the trial court properly determined that father had justifiable cause for his failure to have any communication or contact whatsoever with the child in the one year preceding the filing of the adoption petition because father testified that (1) he knew mother would not answer her phone if he called; (2) he suspended visits with the child due to the COVID-19 pandemic in an effort to keep himself and the child safe; (3) his affair with mother made him reluctant to go to mother's house or send mail there; (4) his lack of transportation made it difficult for him to visit the child; and (5) his financial status prohibited him from seeing the child or enforcing his visitation rights in court. I find father's testimony to be wholly self-serving and not credible and, accordingly, find the trial court's conclusion that these factors demonstrated justifiable cause to be against the manifest weight of the evidence.

{¶ 59} Father's alleged transportation issues did not prevent him from seeing the child. Rather, it is apparent from the record that he simply did not want

to make the effort required to see the child.  Father acknowledged that his home is only four miles from a McDonald's restaurant in Parma where he is court-ordered to meet mother to exercise his parenting time with the child.  He testified that it takes only ten to fifteen minutes to travel by car from his home to the McDonald's, and that girlfriends and other friends drove him to the McDonald's in 2019 after his car accident.  And despite his testimony that he could not ride his bike to the McDonald's because of his alleged bad back, he admitted that his back does not prevent him from working full-time as a security guard at the Jack Casino.

{¶ 60} If father had truly wanted to see the child, he could have asked a friend to take him to McDonald's, as he had done in the past.  Or he could have ridden his bike, walked to the McDonald's, or taken the Line 54 bus there in a single 30-minute ride.  Indeed, father was accustomed to riding the bus; he admitted that he took the bus 45 to 55 minutes to and from his job, which is located 15 miles from his home.  Significantly, he also admitted that he took the bus to visit his one-year-old child born of another relationship.  Father's testimony established that he was able to find transportation to visit his other child, just not the child involved in this case.  Thus, I find his testimony that transportation issues kept him from seeing the child not credible.

{¶ 61} Father's testimony that his medical conditions kept him from visiting the child is likewise not credible.  Father testified that although he was laid off from his job in March 2020 early in the pandemic, he was recalled to work as a security guard at the casino in June 2020.  Father admitted he took the bus to and from work

and that he worked full-time as a security guard in the casino despite his medical conditions. Based on his own testimony, father's medical conditions did not prevent him from riding the bus and working in a seemingly high-risk environment during the pandemic; they apparently only prevented him from visiting the child that is the subject of the adoption petition in this case.

{¶ 62} But even assuming for the sake of argument that the COVID-19 pandemic and father's transportation issues prevented him from physically visiting with the child in this case (even though he was able to visit his other child), I find father's testimony about his alleged inability to visit the child insufficient to establish justifiable cause for his lack of contact with the child because at a minimum, father could have *communicated* with the child.

{¶ 63} "[V]isitation does not equate with communication because a parent can communicate with a child 'notwithstanding the inability to physically visit with the child.'" *In re Adoption of A.L.E.*, 4th Dist. Meigs No. 16CA10, 2017-Ohio-256, ¶ 25, quoting *In re Adoption of Doyle*, 11th Dist. Ashtabula Nos. 2003-A-0071 and 2003-A-0072, 2004-Ohio-4197, ¶ 17. Thus, even where a parent is incarcerated during the one year preceding the filing of an adoption petition, courts have routinely found no justifiable cause for the parent's failure to communicate with his or her child. *See, e.g., Doyle* (no justifiable cause for failure to communicate where incarcerated mother could have sent cards or letters to children); *In re Adoption of C.A.L.*, 2015-Ohio-2014, 35 N.E.3d 44, ¶ 34 (12th Dist.) (despite inability to physically visit with child, no justifiable cause for failure to communicate because

father could have sent cards, letters, or gifts); *In re N.L.T.*, 9th Dist. Lorain No. 14 CA 010567, 2015-Ohio-433, ¶ 29-30 (no justifiable cause where incarcerated mother did not send child any gifts, pictures, or letters, and never called the father, whose telephone number she knew, and asked to speak with the child).

{¶ 64} Despite his testimony that he could not physically visit with the child in the one year preceding the filing of the adoption petition, father clearly had other means by which he could have communicated with the child. Although the parties acknowledged that all communication between father and mother was by text, the record reflects that father never texted mother and asked if she would accept a call from him so that he could speak to the child, who according to mother's testimony, loves to chat on the phone. He also never texted mother and asked her to pass along a message to the child. And although father has Facebook and admittedly video chats with other people, he never asked mother if he could video chat through Facebook with the child.

{¶ 65} Furthermore, nothing prevented father from sending gifts or mail to the child. But father never sent the child a birthday card, a Christmas card, a birthday gift, a Christmas gift, or any other mail during the one-year period preceding the filing of the adoption petition. Father's testimony that he did not know the child's address or could not have found the address is simply not credible in light of the fact that he carried on the affair in the house where the child has lived since birth and the fact that mother's address is available on public records. And father's testimony that he did not send mail to the child because he was

"uncomfortable" doing so because the child lives in the house where he carried on the affair is also incredible in light of father's testimony that he does not want to "lose his son." It would seem that a parent who does not want to "lose" his child would do anything possible to maintain contact with the child, despite any inconvenience to the parent or minor uncomfortable feelings.

{¶ 66} Although father testified that he does not want to lose his child to adoption, the record demonstrates that father lost interest in maintaining a relationship with the child. The child was born in 2015. Pursuant to the Juvenile Court's order, father is entitled to visit the child 156 days each year. In 2017, father cancelled 11 visitation days. In 2018, he cancelled 91 days. In 2019, father cancelled 125 visitation days; in 2020, he cancelled all visitation days except one, and in 2021, father neither had nor requested any parenting days. In light of this evidence, I find father's testimony regarding the alleged factors that prevented him from communicating with the child in the one year prior to the filing of the adoption petition entirely not credible, especially because father admitted that mother never prohibited him from visiting the child. Accordingly, I find the trial court's judgment that father had justifiable cause for his failure to have de minimis contact with the child to be against the manifest weight of the evidence.

{¶ 67} By finding justifiable cause under these circumstances of this case, the majority sets a new standard for justifiable cause under R.C. 3107.07(A) — that meaningless contacts with the custodial parent are sufficient to establish justifiable cause. That is not the standard. The statute specifically provides that consent to

adoption is not required where the noncustodial parent, without justifiable cause, has not had more than de minimis contact "with the minor" for the statutory period. Thus, whether there was justifiable cause should be evaluated with respect to father's communication *with the child* (of which there was none), not his communication with mother.  Accordingly, I dissent.